# In the
# United States Court of Appeals
## for the Eighth Circuit

TROY K. SCHEFFLER, on behalf of himself and
all similarly situated persons,

*Plaintiff-Appellant,*

v.

INTEGRITY FINANCIAL PARTNERS, INC.,
NATIONAL ASSET RECOVERY SERVICES, INC.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the District of Minnesota, Minneapolis, No. 0:12-cv-00188-DWF.
The Honorable **Donovan W. Frank**, Judge Presiding.

## BRIEF OF DEFENDANTS-APPELLEES

AARON R. EASLEY
Admitted *Pro Hac Vice*
SESSIONS FISHMAN
  NATHAN & ISRAEL LLC
3 Cross Creek Drive
Flemington, New Jersey 08822
(908) 237-1660

THOMAS H. SCHAEFER (#213587)
NICHOLAS H. JAKOBE (#0387840)
ERSTAD & RIEMER, P.A.
8009 34th Avenue South
Suite 200
Minneapolis, Minnesota 55425
(952) 837-3249

*Attorneys for Defendants-Appellees*
*Integrity Financial Partners, Inc., National Asset Recovery Services, Inc.*

 

## SUMMARY OF THE CASE AND REQUEST
## FOR ORAL ARGUMENT

Appellant contends Appellees violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., by broadcasting a telephone number on his caller identification device (caller ID) that was false, because it contained a "local" area code in Minnesota when the telephone call originated from Kansas and by failing to meaningful disclose their identity when placing the calls. Appellant's appeal of the Order dismissing his Complaint should be denied: (1) Appellant is unable to establish that Appellees violated any provisions of the FDCPA; (2) the cases upon which Appellant relies are wholly inapposite to the facts here and actually support Appellees' position; and (3) the Truth in Caller ID Act of 2009, 47 U.S.C. § 227(e)(1), does not allow Appellant to bring a private right of action.

The District Court did not err in denying Appellant's Motion to Correct Order and Judgment Pursuant to Fed. R. Civ. P. 60 (Addendum Appendix (ADD.) 14) and by entering a Cost Judgment for Fees and Transcripts in favor of Appellees.  ADD. 13.

Appellees request 30 minutes for oral argument.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1A of the Eighth Circuit Local Rules, Appellees Integrity Financial Partners, Inc. and National Asset Recovery Services, Inc. make the following disclosure:

Integrity Solution Services, Inc., a Missouri Corporation, (formerly known as National Asset Recovery Services, Inc., a Missouri corporation), is wholly owned by NARS Secondary Holding Company, Inc., a Delaware corporation. NARS Secondary Holding Company, Inc., a Delaware corporation, is wholly owned by NARS Holding Company, Inc., a Delaware corporation.

Integrity Financial Partners, Inc., a Kansas Corporation, wholly owned by Integrity Financial Holdings, Inc., a Kansas corporation, was merged out of existence into Integrity Solution Services, Inc., a Missouri corporation, on January 1, 2013, with Integrity Solution Services, Inc., a Missouri corporation as the surviving entity.

Integrity Financial Holdings, Inc., a Kansas Corporation, wholly owned by Integrity Solution Services, Inc., a Missouri corporation (formerly known as National Asset Recovery Services, Inc, a Missouri corporation), was merged out of existence into Integrity Solution Services, Inc., a

ii

Missouri corporation, on January 1, 2013, with Integrity Solution Services, Inc., a Missouri corporation as the surviving entity.

Integrity Solution Services, Inc., a Missouri Corporation, (formerly known as National Asset Recovery Services, Inc.), is wholly owned by NARS Secondary Holding Company, Inc., a Delaware corporation. NARS Secondary Holding Company, Inc., a Delaware corporation is wholly owned by NARS Holding Company, Inc., a Delaware corporation.

Appellate Case: 14-2301    Page: 4    Date Filed: 09/11/2014 Entry ID: 4195923

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL
ARGUMENT................................................................................................i

CORPORATE DISCLOSURE STATEMENT .........................................ii

TABLE OF CONTENTS...........................................................................iv

TABLE OF AUTHORITIES .....................................................................vi

STATEMENT OF THE CASE ...................................................................1

SUMMARY OF ARGUMENT ...................................................................3

LAW AND ARGUMENT ...........................................................................4

STANDARD OF REVIEW .........................................................................4

POINT I:  THE TRANSMISSION OF INFORMATION VIA
A CALLER ID DEVICE IS NOT A COMMUNICATION ....................7

POINT II: APPELLANT'S "CALLER ID" CLAIM FAILS AS A
MATTER OF LAW BECAUSE THE INFORMATION
DISPLAYED WAS ACCURATE..............................................................7

POINT III: IFP MEANINGFULLY DISCLOSED ITS IDENTITY
AS REQUIRED BY § 1692d(6)...............................................................18

POINT IV: THE TRUTH IN CALLER ID ACT SUPPORTS THE
CONCLUSION THAT IFP DID NOT VIOLATE THE FDCPA..........20

POINT V: THERE IS NO BASIS FOR THE AVERMENT THAT
IFP USES NOBLEBIZ LOCALTOUCH BECAUSE IT IS
PROFITABLE .........................................................................................25

POINT VI:  THE DISTRICT COURT APPLIED THE CORRECT
LEGAL STANDARD UNDER FEDERAL RULE OF CIVIL
PROCEDURE 56......................................................................................26

Appellate Case: 14-2301     Page: 5     Date Filed: 09/11/2014 Entry ID: 4195923

## TABLE OF CONTENTS (CONTINUED)

POINT VII:  THE DISTRICT COURT DID NOT ERR IN
DENYING APPELLANT'S RULE 60 MOTION ...................................................27

POINT VIII:  THE DISTRICT COURT DID NOT ERR IN TAXING
APPELLANT COSTS .............................................................................................28

CONCLUSION.......................................................................................................29

Appellate Case: 14-2301     Page: 6     Date Filed: 09/11/2014 Entry ID: 4195923

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001)...................................................................................25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................4

*Baker v. Allstate Financial Services, Inc.,*
554 F.Supp.2d 945 (D.Minn. 2008).........................................................19

*Carman v. CBE Group, Inc.*,
782 F. Supp. 2d 1223 (D. Kan. 2011).......................................................11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................20

*Do v. Wal-Mart Stores*,
162 F.3d 1010 (8th Cir. 1998) .................................................................4, 7

*Elliott v. GC Services, LP,*
2011 WL 5975671 (M.D.Fla. Nov. 28, 2011)..........................................12

*F.D.A. v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)...................................................................................22

*Glover v. Client Services*, *Inc.*,
2007 WL 2902209 (W.D. Mich. Oct. 2, 2007) ....................................7, 11

*Grossman v Dillard Dep't Stores, Inc.*,
47 F.3d 969 (8th Cir. 1995) ........................................................................4

*Hoffman v. Celebrezze*,
405 F.2d 833 (8th Cir. 1969) ......................................................................6

Appellate Case: 14-2301    Page: 7    Date Filed: 09/11/2014 Entry ID: 4195923

# TABLE OF AUTHORITIES (CONTINUED)

*Hoover v. Valley West D M.,*
823 F.2d 227 (8th Cir. 1987) ...................................................................... 6

*Hosna v. Groose*,
80 F.3d 298 (8th Cir. 1996) ........................................................................ 5

*Knoll v. Allied Interstate, Inc.*,
502 F. Supp. 2d 943 (D. Minn. 2007)................................................. 9, 10, 13

*MIF Realty L.P. v. Rochester Assocs.*,
92 F.3d 752 (8th Cir. 1996) .................................................................... 6, 27

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)................................................................................. 23

*Pace v. Portfolio Recovery Associates, LLC*
872 F.Supp.2d 861 (W.D. Mo. 2012) ........................................................ 19

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, __ U.S. __,
132 S.Ct. 2065 (2012)............................................................................. 23

*Richards v. Aramark Svcs, Inc.*,
108 F.3d 925 (8th Cir. 1997) ...................................................................... 6

*Rosebud Sioux Tribe v. A & P Steel, Inc.*,
733 F.2d 509 (8th Cir. 1984) ...................................................................... 5

*Sohns v. Bramacint, LLC,*
2010 WL 3926264 (D. Minn. Oct. 1, 2010) ........................................... 12, 13

*Tolan v. Cotton*,
__ U.S. __, 134 S.Ct. 1861 (2014)............................................................ 26

*U.S. v. One Parcel of Property*,
51 F.3d 117 (8th Cir. 1995) ........................................................................ 6

*U.S. v. Young*,
806 F.2d 805 (8th Cir. 1987) ...................................................................... 6

Appellate Case: 14-2301    Page: 8    Date Filed: 09/11/2014 Entry ID: 4195923

# TABLE OF AUTHORITIES (CONTINUED)

*U.S. v. Estate of Romani*,
523 U.S. 517 (1988)..........................................................................23

*U.S. v. Fausto*,
484 U.S. 439 (1988)..........................................................................23

*U.S. v. Walus,*
616 F.2d 283 (7th Cir. 1980) ........................................................5

*Zortman v. J.C. Christensen & Associates, Inc.*,
870 F.Supp.2d 694 (D. Minn. 2012)................................................19

## **STATUTES**

15 U.S.C. § 1692.............................................................................ii

15 U.S.C. § 1692a(2) ........................................................................7

15 U.S.C. § 1692d(2) ......................................................................28

15 U.S.C. § 1692d(5) ......................................................................28

15 U.S.C. § 1692d(6) .........................................................1,8, 18, 19

15 U.S.C. § 1692e(4) .......................................................................28

15 U.S.C. § 1692e(10) .................................2, 8, 10, 11, 22, 24, 25

47 U.S.C. § 227................................................................................20, 24

47 U.S.C. § 227(e) ...........................................................................25

47 U.S.C. § 227(e)(1).............................................ii, 3, 20, 24

47 U.S.C. § 227(e)(2)........................................................................21

47 U.S.C. § 227(e)(3)........................................................................21

Appellate Case: 14-2301     Page: 9     Date Filed: 09/11/2014 Entry ID: 4195923

## STATUTES (CONTINUED)

47 U.S.C. § 227(e)(5)(A)(i), (6)(A) ..........................................................24

47 U.S.C. § 227(e)(5), (6) ..........................................................24

## RULES

8th Cir. R. App. P. 26.1A ..........................................................iii

8th Cir. R. App. P. 28A(f) ..........................................................31

Fed. R. App. P. 26.1 ..........................................................iii

Fed. R. App. P. 32(a)(7)(B)(I-iii) ..........................................................31

Fed. R. Civ. P. 56 ..........................................................3, 4

Fed. R. Civ. P. 56(c) ..........................................................4

Fed. R. Civ. P. 60 ..........................................................ii, 4, 27

## OTHER AUTHORITIES

47 C.F.R. § 1.80 & § 64.1600 ..........................................................21

47 C.F.R. § 64.1604 as § 64.1605 ..........................................................19

47 CFR § 64.1604(a) ..........................................................21

Charles A. Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure: Civil 2d* § 2857, at 255(2d ed. 1995) ..................5

FCC, *Proposed Rules, Implementation of the Truth in Caller ID Act*,
76 Fed.Reg. 16367(Mar. 23, 2011) ..........................................................21

FCC, *Rules & Regulations, Implementation of the Truth in Caller ID
Act*, 76 Fed.Reg. 43196 (Jul. 20, 2011) ..........................................................21

111th Cog. 1st Sess (Nov. 2, 2009) ..........................................................22

Appellate Case: 14-2301     Page: 10     Date Filed: 09/11/2014 Entry ID: 4195923

## <u>OTHER AUTHORITIES</u>  (CONTINUED)

H.R. REP. 111-461, 111th Cong., 2d Sess.,
2010 WL 1492408 (Apr. 13, 2010) ........................................................... 22

PL 111-331, 124 Stat 3572 (Dec. 22, 2010) ............................................. 20

S. REP. 111-96, 1-2, 2010 U.S.C.C.A.N. 1376, 1376–77 ........................ 22

Wright, Miller & Kane,
*supra*, § 2857, at 257-58 ............................................................................. 5

x

## STATEMENT OF THE CASE

IFP and NARS are debt collectors.[1]  On November 7, 2011, Second Round, LP (a debt buyer) placed a debt owed by Appellant with IFP (and not NARS) for collection.  App. 110, ¶ 6.  Between November 7, 2011, and January 3, 2012, IFP placed seven calls to Appellant.  *Id.* at ¶ 8.  IFP, which is located in Overland Park, Kansas, placed the seven calls to Appellant through use of NobelBiz, Inc., a company that sold the subject local telephone numbers to IFP through a service called LocalTouch.  App. 121 (14:10-23; 15:24-16:14).  By utilizing the LocalTouch product, IFP placed collection calls to Appellant, which calls were displayed with a local telephone number on Appellant's caller ID device.  App. 121 (15:24-16:14); App. 127 (22:18-23:10).  Appellant's caller ID displayed "Osseo, MN 763-447-4600" when IFP called him.  App. 2, ¶ 6.

Appellant contends IFP's use and broadcasting of a local telephone number violates the FDCPA.  Specifically, Appellant contends Appellees undertook the following acts in violation of the FDCPA:

- Repeated placement of telephone calls without meaningful disclosure of the caller's identity by using a false caller ID telephone number in violation of § 1692d(6).  App. 8, ¶ 70;

---

[1] Appellant sued Integrity Financial Partners, Inc. (IFP) and National Asset Recovery Services, Inc. (NARS).  Appendix (App.) 1.  It is undisputed that IFP placed the subject calls to Appellant (*id.* at 112, ¶ 8) and that NARS did not have any contact with Appellant.  *Id.* at 54 (42:15-43:3; 62:8-63:10).

- Repeatedly used false and deceptive means to collect or attempt to collect a debt by use of a false caller ID telephone number in violation of § 1692e(10). *Id.* at ¶ 71.

The District Court was correct to reject the claims and dismiss Appellant's Complaint. IFP owns the telephone numbers it uses when IFP makes calls with the NobelBiz product (App. 125 (15:24-16:14)); the telephone number rings to IFP when it is called (App. 135 (57:7-17), 149 (113:12-25)); and an IFP representative will answer calls made to the telephone number. App. 125 (25:23-28:8), 135 (57:7-17), 149 (113:12-25). IFP uses the local telephone number as a convenience for consumers as it affords an opportunity for consumers to call IFP at no cost. App. 127 (22:18-23:10). Given that IFP owns the telephone numbers it broadcasts to consumers' caller ID devices when IFP uses the NobelBiz product, the information communicated on consumers' caller ID devises is accurate, and therefore, to the extent the Call ID display is a "communication" under the FDCPA, there was nothing false or deceptive about such communication.

Moreover, because the Caller ID displayed IFP's telephone number, Appellee's claim that Appellees failed to meaningfully identify itself by conveying false information similarly fails.

2

## SUMMARY OF ARGUMENT

There is no support for the proposition that the transmission of information via a caller ID device is a "communication" under the FDCPA.

IFP's placement of calls with a telephone number that it owns and answers is neither "spoofing" nor a false or deceptive communication. IFP owned and used the telephone number broadcast on Appellant's caller ID. If a call was returned to that number, the consumer would reach IFP. The number was not a false statement, because it was IFP's contact number. Appellees also did not violate the FDCPA's meaningful disclosure requirement.

The cases upon which Appellant relies are wholly inapposite to the facts here and actually support Appellees' position.

The Truth in Caller ID Act of 2009, 47 U.S.C. § 227(e)(1), does not allow Appellant to bring a private right of action.

The District Court applied the correct legal standard under Fed. R. Civ. P. 56 and 60, and it was correct to enter a Cost Judgment for Fees and Transcripts.

3

<u>**LAW AND ARGUMENT**</u>

**STANDARD OF REVIEW**

Appellant has appealed both the District Court's entry of summary judgment in favor of Appellees and denial of Appellant's motion to correct order and judgment.

**A. Fed. R. Civ. P. 56**

On appeal, the Court is to:

> Review a grant of summary judgment de novo. *Grossman v Dillard Dep't Stores, Inc.*, 47 F.3d 969, 971 (8th Cir. 1995). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). 'We are required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences.' *Grossman*, 47 F.3d at 971. At the summary judgment stage, we may not weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Supreme Court has instructed that courts must ask 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Liberty Lobby*, 477 U.S. at 251-52, 106 S.Ct. 2505.

*Do v. Wal-Mart Stores*, 162 F.3d 1010, 1012 (8th Cir. 1998).

**B. Fed. R. Civ. P. 60**

This Court has described as follows the applicable standard when reviewing the denial of a motion for relief from a judgment or order:

Appellate Case: 14-2301    Page: 15    Date Filed: 09/11/2014 Entry ID: 4195923

Federal Rule of Civil Procedure 60(b) provides that the court may relieve a party from a final judgment for, among other reasons, mistake, inadvertence, surprise, or excusable neglect. A Rule 60(b) motion is committed to the sound discretion of the trial court, and [the appellate court] review[s] the district court's decision to grant or deny the motion only for an abuse of discretion. *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). " ' Abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions.' " *Hosna v. Groose*, 80 F.3d 298, 303 (8th Cir. 1996) (quoting *International Ass'n of Machinists & Aerospace Workers v. Soo Line R.R.*, 850 F.2d 368, 374 (8th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1010, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989)), *petition for cert. filed* (U.S. June 28, 1996) (No. 95-9498). Although we have said that Rule 60(b) motions are disfavored, we also recognize that they "serve a useful, proper and necessary purpose in maintaining the integrity of the trial process and a trial court will be reversed where an abuse of discretion occurs." *Rosebud Sioux Tribe*, 733 F.2d at 515.

Rule 60(b) is to be given liberal construction so as to do substantial justice and " 'to prevent the judgment from becoming a vehicle of injustice.' " *Id.* (quoting *United States v. Walus,* 616 F.2d 283, 288 (7th Cir. 1980)) This motion is grounded in equity and exists "to preserve the delicate balance between the sanctity of final judgments … and the incessant command of a court's conscience that justice be done in light of all the facts." *Id.* (internal quotations omitted) (alterations in original). *See also* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2857, at 255 (2d ed. 1995) ("Equitable principles may be taken into account by a court in the exercise of its discretion under Rule 60(b).") One important equitable consideration is whether the litigants received a ruling on the merits of their claim. "There is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." 11 Wright, Miller & Kane, *supra*, § 2857,

5

at 257-58. In such cases, we must balance the policy favoring finality in judgments against the competing policy of granting parties a hearing on the merits of their claims. *Id.* at 256-57. [The court] also consider[s] whether any substantial rights of the nonmoving party have been prejudiced. *See Hoover v. Valley West D M.* 823 F.2d 227, 230 (8th Cir. 1987).

*MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752 (8th Cir. 1996).

The liberality standard is limited to instances when the merits of the claim have not been heard. This is in keeping with the fact that courts are mindful that "[r]elief under Rule 60(b) is limited. 'A district court should grant a Rule 60(b) motion 'only upon an adequate showing of exceptional circumstances.'" *Richards v. Aramark Svcs, Inc.*, 108 F.3d 925, 927 (8th Cir. 1997) (citations omitted); *see also U.S. v. One Parcel of Property*, 51 F.3d 117, 120 (8th Cir. 1995) (citations omitted) (Rule 60(b) motion only to be granted "upon an adequate showing of exceptional circumstances."); *U.S. v. Young*, 806 F.2d 805, 806 (8th Cir. 1987) (citations omitted) (Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances."); *Hoffman v. Celebrezze*, 405 F.2d 833, 835 (8th Cir. 1969).

Appellate Case: 14-2301    Page: 17    Date Filed: 09/11/2014 Entry ID: 4195923

## POINT I

### THE TRANSMISSION OF INFORMATION VIA A CALLER ID DEVICE IS NOT A COMMUNICATION[2]

The predicate of Appellant's action is that the transmission of information via a caller ID device is a "communication" under the FDCPA. *See* § 1692a(2).[3] It is not. There is no support for this proposition. *See Glover v. Client Services, Inc.*, 2007 WL 2902209, *6 (W.D. Mich. Oct. 2, 2007). Without a communication, there is no basis for Appellant's action as, in order for the FDCPA to apply, the contact with the consumer must be a communication. Because there was no communication, Appellant's FDCPA action fails.

## POINT II

### APPELLANT'S "CALLER ID" CLAIM FAILS AS A MATTER OF LAW BECAUSE THE INFORMATION DISPLAYED WAS ACCURATE

Appellant alleges IFP "repeatedly used false and deceptive means to collect or attempt to collect debts by use of a false caller ID telephone

---

[2] The standard of review for each issue presented in this appeal, with exception of the Court's consideration of Appellant's appeal of denial of his Motion to Correct Order and Judgment, *infra* Point VII, is de novo review. *Do*, 162 F.3d at 1012.

[3] Section 1692a(2) defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

7

number in violation of 15 U.S.C. § 1692e(10) and § 1692d(6)."  App. 8, ¶¶ 70 and 71.  Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debts…," and § 1692d(6) prohibits a debt collector from placing "telephone calls without meaningful disclosure of the caller's identity."

IFP's placement of collection calls to Appellant with a local phone number did not violate the FDCPA.  In fact, the use of the local telephone number did not cause false information to appear on Appellant's caller ID. IFP owns the telephone number.  App. 125 (15:24-16:14).  The telephone number is "real" in that it rings to IFP when called, and an IFP representative will answer the call if that number is dialed.  App. 125 (25:23-28:8), 135 (57:7-17), 149 (113:12-25).  And the use of the local telephone number is provided as a convenience for consumers as it affords an opportunity for the consumers to call IFP at no cost.  App. 127 (22:18-23:10).  Ultimately, given that IFP owns the number about which Appellant complains, the information communicated on Appellant's caller ID is accurate and thus there is no violation of §§ 1692d(6) and 1692e(10).

Jurisprudence on this issue – whether a debt collector's use of a local telephone number that it owns and that it answers when the consumer calls – is undeveloped; there is no case directly on point.  While it is well-settled

that a debt collector is obligated to provide "meaningful disclosure" of its identity when it calls a consumer, as stated, *supra* Point I*,* there is no support for the proposition that the transmission of information via a caller ID device is a "communication" under the FDCPA.

In *Knoll v. Allied Interstate, Inc.*, 502 F. Supp. 2d 943, 946 (D. Minn. 2007), the court opined that "[m]eaningful disclosure requires a debt collector to 'disclose enough information so as not to mislead the recipient as to the purpose of the call.'" In *Knoll*, the defendant collection agency – unlike in the instant matter - transmitted patently false information over the consumer's caller ID device. The collection agency arranged for the caller ID to state "Jennifer Smith," despite the fact there was no employee by that name. Based upon this, the court denied defendant's Motion to Dismiss, concluding that the caller ID communication was sufficient to state a claim asserting violations related to false statements and failure to provide a meaningful disclosure. The court did not conclude there was a violation; the court merely determined that plaintiff had set forth a sufficient basis to maintain the claim.

While not factually similar, *Knoll* is relevant to the instant matter for its general proposition that a debt collector that transmits a true statement on the consumer's caller ID device has provided meaningful disclosure and not

9

false or misleading information. The Court in *Glover*, 2007 WL 2902209 (W.D.Mich. Oct 2, 2007), a case that is directly applicable to this action, gave further consideration to the concepts of false and misleading communications, as well as meaningful disclosure related to caller ID information. In *Glover*, the debt collector's call was displayed on the consumer's caller ID as "unavailable." The court concluded the "communication" was neither false nor misleading, and that, in fact, the caller ID information was accurate as the debt collection company made its telephone number unavailable to caller ID devices and such information was accurately communicated to plaintiff. *Id.* at * 3. In coming to this conclusion, the Court noted:

> Rather than being misled into answering his phone based on the representation that the caller was 'Jennifer Smith,' here Plaintiff was accurately informed that the identity of the caller was unavailable Plaintiff then could choose whether to answer his telephone. Thus, while *Knoll* supports the proposition that a debt collector cannot contact an individual using a telephone that causes false information to appear in the individual's caller ID device, the Court does not interpret this decision as supporting Plaintiff's position that the communication of accurate information constitutes false or deceptive behavior in violation of 15 U.S.C. § 1692e(10).

*Id.* at *4.

10

The Court in *Glover* also questioned whether "meaningful disclosure" is required or even possible in the context of transmitting caller ID information:

> The Court also notes that the FDCPA was enacted before the advent of caller ID, thus Congress certainly anticipated that the meaningful disclosure requirement could be satisfied *after* communication was established with the debtor or his recording device. While Congress could amend the FDCPA to require debt collectors to 'meaningfully identify' themselves via caller ID devices, it has not done so and in the Court's estimation the FDCPA, as presently written, requires no such disclosure.

> Furthermore, it is not entirely clear that a debt collector could satisfy the meaningful disclosure requirement through use of a caller ID device. As previously noted, to comply with this requirement, the caller must state 'his or her name and capacity' and 'disclose enough information so as not to mislead the recipient as to the purpose of the call.' It is not clear how such information could be communicated via a caller ID device.

*Id.* at *6-7.

Other courts have adopted the reasoning in *Glover*. In *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223 (D. Kan. 2011), plaintiff contended defendant's calling of plaintiff from several different numbers and hanging up without leaving voice mails violated § 1692e(10) and its proscription against using false and deceptive means to collect a debt. The Court disagreed:

> The FDCPA does not define 'deceptive,' which has a general definition of 'tending or having power to deceive; misleading.' 'Deceive' is generally defined as 'to cause to accept as true or

11

valid what is false or invalid.'  Even accepting as true plaintiff's allegations, the Court does not see how such actions are deceptive.  To the contrary, the display in plaintiff's caller ID device of CBE's phone numbers was entirely accurate.  Although plaintiff complains that her caller ID did not reveal CBE's identity or name, there is no evidence that CBE blocked this information or made any attempt to deceive her.  In this case, the only information conveyed on plaintiff's caller ID display was CBE's phone numbers, which were entirely accurate.  Plaintiff could then choose whether to answer her telephone.

*Id.* at 1233-34.  (Footnotes omitted.)  *See also Elliott v. GC Services, LP*, 2011 WL 5975671 (M.D.Fla. Nov. 28, 2011) (Plaintiff complained debt collector's display of an 800 number and words "800 service" on two incoming calls was false and deceptive.  The Court granted defendant's Motion for Summary Judgment as there was no evidence defendant caused false or deceptive information to be displayed on plaintiff's caller ID.)

In the face of this significant body of law that supports IFP's contention that it did not violate the FDCPA, Appellant has held out *Sohns v. Bramacint, LLC*, 2010 WL 3926264 (D. Minn. 2010) as dispositive of the instant action.  It is not.  This is indisputably evident from review of the facts.  In *Sohns*, the debt collection company, unlike what IFP did here, purposely entered the plaintiff's mother-in-law's phone number to appear on plaintiff's caller ID.  The debt collection company representative brazenly testified during her deposition: "I used the skip tracing 800 number to

12

change my number and make it look like I was her mother-in-law so that she would answer the call and I would get to speak to her." *Id.* at * 1. Under such patently violative circumstances, it is no surprise the *Sohns* court determined that the debt collection company used false, deceptive, or misleading means in connection with the collection of a debt.

The facts of the instant matter are wholly inapposite to the facts in *Sohns* and *Knoll*, *supra*. The instant case is not one where IFP acted as if it were a fictitious person calling Appellant. IFP called from its number. IFP owns the telephone number from which it called Appellant; the information, i.e., telephone number, displayed on Appellant's caller ID was accurate; and IFP will answer return calls made to the number that showed on Appellant's caller ID. IFP's Vice President of Operations, George DelVecchio gave comprehensive testimony during his deposition regarding all of these truisms:

**(1)    IFP OWNS THE 763 TELEPHONE NUMBER-**

Q.    And tell me how it [NobelBiz] works. What's your understanding of how it works?

A.    Essentially, what happens is <u>we acquire blocks of phone numbers from NobleBiz, the LocalTouch product. We own them</u> in the sense that you would own your phone number with your local provider as long as you're paying for it, okay? So, <u>they're our telephone numbers</u>. Basically, when - - when we make outbound calls there's, there's a trigger process that if it is, if it is one of our

13

dialer pools that uses the product, <u>it will broadcast a local number that we own and the customer obviously can either answer the phone. If they were to call that number back, they would get us</u>. That's essentially how the - - the product works.

App. 125 (15:24-16:14). (Emphasis added.)

### (2) INFORMATION TRASMITTED ON THE CALLER ID-

Q. Okay. Now you are aware that, or are you aware of what information is provided to the consumer debtor on caller ID?

A. Yeah, to - - I've never called myself on it, but it would be a local area code exchange and then telephone, the four digit number, so in other words, a local telephone number and possibly if the city has the city information it may provide a city and state.

App. 126 (18:16-24).

### (3) EASIER FOR CONSUMERS TO CALL IFP-

Q. Okay. So, why doesn't Integrity use those numbers [i.e., its 1-800 number] or their local [Kansas] numbers when calling out?

A. . . . All we're, all we're doing by acquiring a local telephone number is, first of all, giving the consumer the knowledge that there is a number when, <u>when they answer the phone and they can call back and get us at that number</u> and then in addition, so we differentiate ourselves from a telemarketer or solicitor. We're not trying to solicit anything. This is important to the majority of people who owe money and basically that's why we use the product.

App. 127 (22:18-23:10). (Emphasis added.)

14

Q.    Okay.  So, why wouldn't Integrity just use its own number then and program its caller ID to say Integrity Financial Solutions?

A.    . . . By calling LocalTouch they see a local telephone number, they still <u>have the opportunity to answer, not answer, or call us back at that number at a later date</u>. You can't call back an unknown caller ID number, so, they have an opportunity to call us there.

App. 127 (23:16-24:12).  (Emphasis added.)

Q.    Okay.  So, what do you base that on?  You say we were, our research shows that we've been getting better, we got better callback rates and this was the reason, is that they liked local numbers as opposed to an unknown 800 number.

A.    We had people tell us that when they called in.

Q.    And who told you that, or did someone tell you directly on the phone?  Did you actually - -

A.    I've talked to people, you know, I've listened to calls. You know, that's part of my job.

Q.    So, you heard that from collectors?

A.    Collectors, customers.

Q.    Any by customers, who are your customers?

A.    The people that we're calling that owe the money.

Q.    Okay, the debtors?

A.    The debtors.

Q.    And let's talk about that for a minute.  So, the people that you talked to and the feedback that you got was that, hey,

15

this is great, because this is a local number and it's not a solicitor, it's not a solicitation; is that right?

A.    Yeah.  I mean, I don't know that anybody actually ever said it in those words.  More comments associated with, well, I answered the phone because it was a local number and we had the conversation.  It wasn't intrusive, it wasn't misleading, you know.

* * * *

Q.    they [Integrity] could use their 913 [Kansas] numbers, correct?

A.    Uh-huh.

Q.    Is that a yes?  They could if they wanted to, if they wanted to tell the debtors who they were.

A.    No, we could use the 1-800  number or the 913 number.  That doesn't have anything to do with whether we're telling a customer who we are.  <u>We own the block of LocalTouch numbers like I own the 913.  If they call that number they're going to get me just like they call the 913 number.</u>

App. 127 (25:23-28:8).  (Emphasis added.)

Q.    Okay, you don't think that it - - you don't think by saying 763 what the number is, Osseo, Minnesota, that that doesn't mean that somebody's got a local number right there?

A.    That's the number that broadcasts on the caller ID.

Q.    And it's your testimony that you don't believe that that's misleading?

A.    No, its not.

16

Q.   Okay.

A.   It would - - we - - <u>the number is our number.  The</u>
     <u>customer can call that number and contact us.  If they</u>
     <u>answer that call they're going to get us, we're going to</u>
     <u>disclose meaningfully who we are, what we're doing, and</u>
     <u>what we're calling about.</u>

App. 129 (30:21-31:11).  (Emphasis added.)

### (4)   THE NUMBER RINGS TO IFP-

Q.   Okay, and you understand that that's - - at paragraph 26
     of his, of Troy's complaint he said that he did try to call
     the number back to figure out who it was and he got
     disconnected or fast busy result?

A.   Yeah, and in listening to the call it was a normal busy
     and it was audible hearing him cursing and again, I can't
     say why he was cursing.  Maybe he misdialed the number
     to cause it to ring busy 'cause <u>I called the number and it</u>
     <u>rang right through to our center.</u>

App. 135 (57:7-17).

Q.   What - - is there any feature that you're aware of on
     LocalTouch that provides for rollover to answering
     machine or anything else?  So, let's say, let's say Troy is
     trying to call in and the 763 exchanges are being used.
     Does it roll into - -

A.   Yeah, it - - by design it should.

Q.   Okay, and what, where does it roll to?

A.   It rolls to one of the voice mail numbers and I'm not sure
     where it's pointed in the system, <u>but if anybody calls in</u>
     <u>to here, all of our numbers are tied, eventually it's going</u>
     <u>to get to a voice mail if there's not an agent or if the</u>
     <u>switchboard's not available to take the call.</u>

17

App. 149 (113:12-25). (Emphasis added.)

In sum, IFP called Appellant with a telephone number with a "763" area code that IFP owns. The transmission of the telephone number on Appellant's caller ID includes entirely accurate information. Appellant was able to learn from his caller ID that the call came from a 763 number. Subsequent to viewing the telephone number on his caller ID, Appellant had the option to answer the call and speak with an IFP representative or later call the number and speak with an IFP representative. IFP's communication of accurate information on Appellant's caller ID satisfies its meaningful disclosure requirements and does not constitute false or deceptive behavior. *See Glover*, 2007 WL 2902209, at *4.

## POINT III

### IFP MEANINGFULLY DISCLOSED ITS IDENTITY AS REQUIRED BY § 1692d(6)

Appellant makes the related argument that using the local area code on transmissions to Appellant's caller ID device also violated § 1692d(6) of the FDCPA. Section 1692d provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: ...

18

> (6)     Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Section 1692d(6) "requires a debt collector to disclose the caller's name, the debt collection company's name, and the nature of the debt collector's business." *Baker v. Allstate Financial Services, Inc.,* 554 F.Supp.2d 945, 950 (D.Minn.2008). Here, Appellant's § 1692d(6) claim fails because there is no requirement that this disclosure occur in the caller ID transmission; it is sufficient for IFP to give the requisite disclosures during the actual communication. *See Zortman v. J.C. Christensen & Associates, Inc.*, 870 F.Supp.2d 694, 700 (D. Minn. 2012) (§ 1692d(6) merely requires a debt collector to meaningfully identify itself in communications with a consumer); and *Pace v. Portfolio Recovery Associates, LLC*, 872 F.Supp.2d 861, 865 (W.D. Mo. 2012) (concluding that there was no violation of § 1692d(6) when the debt collector was identified during the conversation with the consumer). Appellant has failed to offer any evidence that IFP did not give the disclosures. Conversely, IFP has offered evidence that its identity is meaningfully disclosed whenever communicating with a consumer. App. 129 (31:8-11) ("If they answer that call they're going to get us, we're going to disclose meaningfully who we are, what we're doing, and what we're calling about.")

19

Appellant has failed to offer any evidence rebutting these facts. Instead, Appellant focuses his claim only on the information contained in the Caller ID display, and neglects to consider that any conversation with IFP contained the requisite disclosures. Appellant's failure to offer any evidence that IFP failed to meaningfully disclose its identity when communicating with Appellant dooms the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law").

## POINT IV

### THE TRUTH IN CALLER ID ACT SUPPORTS THE CONCLUSION THAT IFP <u>DID NOT VIOLATE THE FDCPA</u>

In 2010, Congress passed the Truth in Caller ID Act of 2009, which amended 47 U.S.C. § 227, by adding a new subsection (e). *See* PL 111-331, 124 Stat 3572 (Dec. 22, 2010)(hereinafter referred to as the "Caller ID Act"). In pertinent part, the Caller ID Act prohibits a caller "to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1). The Caller ID Act further provides that blocking one's caller ID from being displayed does

20

not violate the Act. 47 U.S.C. § 227(e)(2).

In addition, the Caller ID Act required the FCC to enact regulations implementing its provisions. 47 U.S.C. § 227(e)(3). The FCC proposed and then adopted regulations implementing its provisions in 2011. FCC, *Proposed Rules, Implementation of the Truth in Caller ID Act*, 76 Fed.Reg. 16367 (Mar. 23, 2011); FCC, *Rules & Regulations, Implementation of the Truth in Caller ID Act*, 76 Fed.Reg. 43196 (Jul. 20, 2011)(amending 47 C.F.R. § 1.80 & § 64.1600, redesignating 47 C.F.R. § 64.1604 as § 64.1605, & enacting 47 C.F.R. § 64.1604, eff. Aug. 19, 2011).

As the FCC observed, in enacting the Caller ID Act, Congress intended to "focus on whether a person or entity has knowingly manipulated the caller identification information in order to defraud, cause harm, or wrongfully obtain anything of value." *See* 76 Fed.Reg. 43196, 43198 *¶ 8.* In setting the bar high for Caller ID violations, Congress made clear that "the transmission of incorrect caller ID information by carriers and providers acting without the requisite intent to defraud, cause harm or wrongfully obtain anything of value does not violate the Truth in Caller ID Act or our rules implementing the Truth in Caller ID Act." 76 Fed.Reg. *43196, 43199 ¶ 14*.

21

The primary concern leading to the enactment of the Caller ID Act was the practice known as "ID spoofing:"

> ID spoofing can make a call appear to come from any phone number the caller wishes. For instance, the AARP issued a "scam alert" when someone posing as a courthouse employee called a Sterling, Michigan, woman claiming that she had missed jury duty that week. The caller threatened that a warrant was being issued for her arrest and then asked her to confirm her Social Security number in order to verify her identity. This scam appeared even more real when the person responsible used caller ID spoofing to display the name and number of the courthouse on the ID box. In another widely-reported case of ID spoofing, a SWAT team shut down a neighborhood in New Brunswick, New Jersey, after receiving what they believed was a legitimate distress call. A caller had used spoofing to trick law enforcement into thinking that an emergency call was coming from an apartment in the neighborhood. In yet another example, identity thieves bought a number of stolen credit card numbers. They called Western Union, set up caller ID information to make it look like the call originated from the credit card holder phone line, and used the credit card numbers to order cash transfers.

S. REP. 111-96, 1-2, 2010 U.S.C.C.A.N. 1376, 1376–77, 111th Cong. 1st Sess (Nov. 2. 2009). *See also* H.R. REP. 111-461, 111th Cong., 2d Sess., 2010 WL 1492408 (Apr. 13, 2010).

While Appellant's claims here are brought under the general provision of 15 U.S.C. § 1692e(10), it is clear that "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). The "'classic judicial task of

22

reconciling many laws enacted over time, and getting them to 'make sense' in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.'… This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand." *Id.* at 143 (quoting *United States v. Fausto*, 484 U.S., 439, 453 (1988)). In such case, "'a specific policy embodied in a later federal statute should control [the Court's] construction of the [earlier] statute, even though it ha[s] not been expressly amended.'" *Id.* at 143 (quoting *United States v. Estate of Romani*, 523 U.S. 517, 530-31 (1988)).

Further, in construing two congressional enactments, such as when both a general and specific statute might be applicable, courts adhere to the canon of statutory construction that a specific enactment trumps a more general one. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, __ U.S. __, 132 S.Ct. 2065, 2071 (2012)("[I]t is a commonplace of statutory construction that the specific governs the general.")(quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 (1992)). Otherwise, the specific statutory enactment would be rendered superfluous.

In the enactment of the Caller ID Act, Congress clearly found that the purpose of the Act was to prohibit "knowingly transmit[ting] misleading or

23

inaccurate caller identification information ***with the intent to defraud, cause harm, or wrongfully obtain anything of value***…." 47 U.S.C. § 227(e)(1); 47 CFR § 64.1604(a)("No person or entity in the United States shall, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly cause, directly or indirectly, any caller identification service to transmit or display misleading or inaccurate caller identification information.").

Because Appellant cannot show that the caller ID display with a local area code was either misleading or inaccurate, or done with an intent to defraud, cause harm or to wrongfully obtain anything of value from him, the § 1692e(10) claim fails as a matter of law.

Moreover, unlike other provisions of 47 U.S.C. § 227, when Congress enacted the Caller ID Act, it did not provide a private right of action for violations. *Compare* 47 U.S.C. § 227(b)(3); 227(c)(5), with 47 U.S.C. § 227(e)(5), (6). Instead, Congress provided for enforcement by the Federal Communications Commission, as well as by states through parens patriae suits initiated by state attorneys on behalf of citizens. 47 U.S.C. § 227(e)(5)(A)(i), (6)(A). As such, Appellant cannot proceed to prosecute a Caller ID Act claim where Congress has not provided a private right of

Appellate Case: 14-2301    Page: 35    Date Filed: 09/11/2014 Entry ID: 4195923

action for a violation of this portion of the TCPA. See *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001):

> [P]rivate rights of action to enforce federal law must be created by Congress. …The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. … Statutory intent on this latter point is determinative. … Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

(citations omitted).

In light of the fact there is no private right of action under 47 U.S.C. § 227(e), Appellant should not be permitted to bootstrap an otherwise non-actionable claim under the rubric of the general prohibition appearing in § 1692e(10).

## POINT V

### THERE IS NO BASIS FOR THE AVERMENT THAT IFP USES NOBLEBIZ LOCALTOUCH <u>BECAUSE IT IS PROFITABLE</u>

Appellant has distorted the testimony of IFP's corporate representative, George Del Vecchio, and has supported Appellant's argument with self-serving advertisements and statistics that NobleBiz published. App. 211. The distortion of the testimony is improper, and the reliance upon the NobleBiz literature is hearsay. Further, IFP has shown, *supra*, that it has complied with the FDCPA and the Truth in Caller ID Act,

Appellate Case: 14-2301    Page: 36    Date Filed: 09/11/2014 Entry ID: 4195923

and that there is no support for Appellant's claims in this action. Finally, even assuming, *arguendo*, that Appellant's arguments were supported by the record and that LocalTouch does increase IFP's success rate in collecting debts, such a motive does not transform the conduct into a violation of the FDCPA. The FDCPA specifically allows for the collection of debts by debt collectors like IFP, provided the collection of debts is done in a way that is not false or unfair. Here, IFP's broadcasting of its telephone number on a caller ID display is neither false nor unfair.

## POINT VI

### THE DISTRICT COURT APPLIED THE CORRECT LEGAL STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 56

The District Court analyzed the facts and applicable law consistent with the proper standard under Rule 56. App. 298. Plaintiff's reliance upon *Tolan v. Cotton*, 134 S.Ct. 1861 (2014), is misapplied. *Tolan* is limited to consideration of factual disputes in the finite context of qualified immunity cases arising out of alleged excessive force by police. The rationale and holding in *Tolan* is inapplicable to the straightforward legal issue here.

26

## POINT VII

## THE DISTRICT COURT DID NOT ERR IN DENYING APPELLANT'S RULE 60 MOTION[4]

On October 28, 2013, the Court issued a comprehensive Memorandum and Order setting forth its concise and exacting reasons why Appellant's action failed, and dismissed Appellant's Complaint with prejudice. App. 298. Appellant then filed a Motion to Correct Order and Judgment Pursuant to Fed. R. Civ. P. 60. The District Court denied that motion without error. ADD. 14.

The District Court considered Appellant's summary judgment arguments as Appellant presented them and considered the case law Appellant proffered, both in his pleadings and during an extended oral argument. Appellant had a hearing on the merits of his claims. The District Court did not rest its decision on erroneous factual findings or legal conclusions. Appellant did not show the exceptional circumstances required for the extraordinary relief he sought, and instead sought the proverbial second bite of the apple. The District Court agreed, concluding: "Plaintiff is rearguing points already raised and addressed by the Court. Thus, these

---

[4]  The standard of review of Appellants appeal of denial of his Motion to Correct Order and Judgment Pursuant to Fed. R. Civ. P. 60 is a determination of whether the District Court abused its discretion. *MIF Realty L.P.*, 92 F.3d at 752.

Appellate Case: 14-2301    Page: 38    Date Filed: 09/11/2014 Entry ID: 4195923

arguments are not properly brought under Rule 60(b).  For this reason, the motion is denied."  ADD. 16.

## POINT VIII

### THE DISTRICT COURT DID NOT ERR
### IN TAXING APPELLANT COSTS

The District Court's entry of a Cost Judgment of $1,760.59 for Fees and Transcripts was correct and proper.  ADD. 13.  Appellees filed a comprehensive Memorandum of Law in support of their Motion for Summary Judgment augured with the deposition testimony of Mr. DelVecchio (App. 121-153) and Appellant.  (App. 44-109).  The District Court, in its Memorandum Opinion and Order, cited to and relied upon Mr. DelVecchio's deposition testimony.  App. 298 at 2, 5, and 9.

It is incredulous to argue Appellant's deposition was not necessarily obtained for use in the case.  As the District Court acknowledged, Appellant filed numerous claims, including ones for violation of §§ 1692d(2), 1692d(5), and 1692e(4) of the FDCPA.  App. 298 at 4.  Appellees relied upon the deposition testimony of Appellant to combat these claims and expose them for their subjective interpretation and baselessness such that Appellant's attorneys forfeited the claims by not even attempting an argument to save the claims.  App. 298 at 9.  But for the effective deposition of Appellant, Appellant would have continued prosecution of the claims.

28

Thus, it is irrefutable from the pleadings and Appellant's forfeiture of the claims that his deposition was necessarily obtained for use in the case. What's more, Appellant filed a class action Complaint. It would have been inexcusable for Appellees and their counsel to bypass Appellant's deposition.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Appellant's Appeal, Affirm dismissal of Appellant's Complaint, and Affirm the Cost Judgment entered in favor of Appellees.

September 11, 2014          Respectfully submitted:

/s/  Thomas H. Schaefer
Thomas H. Schaefer, MN Att'y #213587
Nicholas H. Jakobe, MN Att'y #0387840
ERSTAD & RIEMER, P.A.
8009 34th Avenue South, Suite 200
Minneapolis, MN  55425
Telephone No.: (952) 837-3250
Email:  tschaefer@erstad.com
Email:  njakobe@erstad.com

Aaron R. Easley, Esq.
SESSIONS, FISHMAN, NATHAN
  & ISRAEL, L.L.C.
3 Cross Creek Drive
Flemington, NJ  08822
Telephone No.:  (908) 237-1660
Email:  aeasley@sessions-law.biz

*Attorneys for Appellees*

29

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document, including all headings, footnotes, and quotations, but excluding summary of the case, the table of contents, table of authorities, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 6,601 words, as determined by the word count of the word-processing software used to prepare this document, specifically Microsoft Word 2007 in Tines New Roman 14 point font, which is no more than 14,000 words permitted under Fed.R.App.P. 32(a)(7)(B)(i).

/s/  Thomas H. Schaefer
Thomas H. Schaefer

Appellate Case: 14-2301     Page: 41     Date Filed: 09/11/2014 Entry ID: 4195923

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

/s/ Thomas H. Schaefer
Thomas H. Schaefer

Appellate Case: 14-2301     Page: 42     Date Filed: 09/11/2014 Entry ID: 4195923

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 11, 2014, an electronic copy of the Brief of Defendants-Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  The undersigned also certifies that the following participant in this case is a registered CM/ECF user and that service of the Brief will be accomplished by the CM/ECF system:

Thomas J Lyons Sr.
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Street
Vadnais Heights, MN 55127

Peter James Nickitas
PETER J. NICKITAS
   LAW OFFICE, LLC
431 S. Seventh Street, Suite 2446
P.O. Box 15221
Minneapolis, MN 55145-0221

/s/  Thomas H. Schaefer
Thomas H. Schaefer

32